IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER DEAN HENDERSON,** ) | Civil Action No. 7:14-cv-00491 | |
| Petitioner, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| **WARDEN OF GREEN ROCK** ) | | |
| **CORRECTIONAL CENTER,** ) | By: Norman K. Moon | |
| Respondent. ) | United States District Judge | |

Christopher Dean Henderson, a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction from the Circuit Court of Campbell County in 2011. Henderson argues that his trial counsel was constitutionally ineffective. The state court found that Henderson's ineffective assistance of trial counsel claims were meritless. I conclude that Henderson failed to exhaust state court remedies for all of the instant ineffective assistance claims and that the state court did not erroneously interpret the facts or federal law when dismissing the exhausted claims. Therefore, I will grant respondent's motion to dismiss.

I.

Following a bench trial, Henderson was found guilty of two counts of statutory burglary in violation of Virginia Code § 18.2-91 and sentenced to prison. The facts adduced during trial are as follows:

> [O]n the morning of March 14, 2011, [Henderson] entered an elderly woman's home without the woman's permission. He entered the "outside door, came all the way through the mudroom, past the bedroom, past the bathroom, [and] into the kitchen." The woman, [Ms. Keesee,] who sometimes wore a hearing aid, did not hear the doorbell or a knock at her front door, but heard some sounds near her kitchen door. She looked up and saw [Henderson], "standing at the doorframe, leaning around with his head." The woman, thinking [Henderson] was her son-in-law, began speaking to [Henderson] until she realized he was not her son-in-law. The woman asked [Henderson], "Who are you?" and asked "what

[Henderson] was doing in her house." [Henderson] gave the name "Chris Smith" and "said he needed a phone book" so that he could locate a friend he claimed had previously lived in the neighborhood. The woman led [Henderson] to a desk and gave him a phone book, a pencil, and some paper. Suddenly, [Henderson] said, "I've got to use your bathroom, I'm just about to burst." The woman gestured toward the bathroom, where [Henderson] stayed for ten minutes. When [Henderson] finally exited the bathroom, the woman gave [Henderson] the phone book and asked him to leave her home.

Later that day, around lunchtime, [Henderson] entered the home of a man[, Mr. Elliott,] and his wife. The man heard the doorbell ring, but before he could get up to answer the door, [Henderson] came into the home and closed the door behind him. When the man asked [Henderson] what he was doing inside his home, [Henderson] replied that he was looking for the telephone number of a boy who had lived across the street several years earlier. The man retrieved his telephone book to try to locate the number for [Henderson]. "Then all of a sudden, [Henderson] said he had to go to the bathroom" and claimed "he was about to bust." The man allowed [Henderson] to use the bathroom, where [Henderson] stayed for eight or nine minutes. During that time, the man heard [Henderson] "opening and shutting the drawers," although toilet paper, hand soap, and a towel were already out in plain view. The man's wife retrieved the man's handgun from the back bedroom, gave it to the man, and then went outside to collect the license plate number from [Henderson]'s vehicle. When [Henderson] exited the bathroom, he thanked the man and said "he guess he'd better go." [Henderson] then left the man's home.

At trial, [Epperson,] an investigator from the sheriff's department[,] testified that, at approximately 10:00 a.m. on March 14, 2011, he received a notice from dispatch to be on the lookout for a white Chrysler 300 vehicle with out of state tags, suspected to be involved in a possible DUI. Later that afternoon, dispatch sent a broadcast regarding the lunchtime intrusion into the man's home. The investigator responded and arrived on the scene where [Henderson] stood outside a white Chrysler 300 with a Mississippi tag. To the investigator, [Henderson] "appeared that he may be impaired." In response to the investigator's question whether [Henderson] had been to the man's home, [Henderson] responded that "he had been visiting friends." The investigator arrested [Henderson] and searched his vehicle, recovering a plastic bag containing between seventy and one-hundred pills, consisting of a variety of different types of medications," including "prescription-type pills, hydrocodone, things of that nature." The investigator also testified that, in January 2011, three months earlier, [Henderson] pled guilty to obtaining controlled substances by fraud.

*Henderson v. Commonwealth*, No. 2304-11-3, slip op. at 2-3 (Va. Ct. App. July 11, 2012)

(original alteration brackets omitted). After considering the evidence, the trial judge found

2

Henderson guilty of two counts of burglary, citing the facts that Henderson entered the two homes without any reason, he lied about his name, "the issue of the phone book and needing two phone books," his similar statements about needing a bathroom before he burst, the length of time in the bathrooms, his perusal of the bathroom cabinets, and his guilty plea to prescription fraud. (Trial Tr. 82:25 – 83:14.) Henderson's appeals to the Court of Appeals of Virginia and the Supreme Court of Virginia were unsuccessful.

In October 2013, Henderson filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. The Supreme Court of Virginia dismissed the petition, determining that, *inter alia*, counsel did not provide ineffective assistance. The Supreme Court of Virginia also deferred to the Court of Appeals of Virginia's prior determination that the evidence was sufficient to sustain the convictions and that the trial judge did not abuse discretion for admitting into evidence Henderson's recent conviction for prescription fraud.

Henderson timely filed the instant petition for a writ of habeas corpus in September 2014, presenting six claims of ineffective assistance of counsel. First, counsel allegedly failed to challenge discrepancies in Mr. Elliott's testimony or challenge Mr. Elliott's mental capacity to testify. Second, counsel allegedly failed to investigate before trial or question Ms. Keesee as to why she waited two weeks from the date of the offense to contact law enforcement. Third, counsel allegedly failed to object to the admission of prejudicial testimony and exhibits concerning Ms. Keesee's medicine cabinet. Fourth, counsel allegedly failed to object to the Commonwealth's leading questions of Mr. Elliott. Fifth, counsel allegedly failed to object to the admission of prejudicial testimony of Investigator Epperson regarding the pills found in Henderson's car and further failed to investigate whether the pills were medications prescribed to

3

Henderson by his physician, to ask Henderson if they were prescribed to him, or to have the pills analyzed by a professional. Sixth, counsel was ineffective for erroneously stating that Henderson was looking for a phone book in Mr. Elliott's home because the Commonwealth used this misstatement to argue Henderson used it as a ruse to gain entry into the home.

## II.

Henderson's first, second, fourth, and sixth claims were not adequately presented to the Supreme Court of Virginia. A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000); *see* 28 U.S.C. § 2254(b) (mandating exhaustion). The purpose of exhaustion is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 846 (1999). Notably, the exhaustion requirement is satisfied by finding that the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993) (citing *Picard v. Connor*, 404 U. S. 270, 275-76 (1971)). Therefore, Henderson must present both the same argument and factual support to the state court prior to filing the claim with a federal court. *Anderson v. Harless*, 459 U. S. 4, 6-7 (1982).

The state record establishes that Henderson did not advance his first, second, fourth, and sixth claims to the Supreme Court of Virginia. Henderson argues that the claims are exhausted because their supporting facts were either in the record or mentioned in his other state habeas

4

claims not about the ineffective assistance of counsel. However, these arguments are not sufficient to establish the exhaustion required by 28 U.S.C. § 2254(b). *See, e.g.*, *Pruett*, *supra*.

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). "[T]he exhaustion requirement for claims not fairly presented to the state's highest court is technically met when . . . a state procedural rule would bar consideration if the claim was later presented to the state court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (citations omitted), *overturned on other grounds by Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). Virginia Code § 8.01-654(B)(2) bars Henderson from pursuing the claims in a new state habeas petition. Thus, the first, second, fourth, and sixth claims are treated as though they are procedurally defaulted and are barred from review in this court unless Henderson establishes that a fundamental miscarriage of justice would result without their review or that cause and prejudice excuses the default. *Clagett v. Angelone*, 209 F.3d 370, 378-79 (4th Cir. 2000).

Henderson fails to establish any basis to consider the claims as none of the claims are substantial. *See Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012). For the first claim, Henderson fails to show Mr. Elliott was not competent to testify or that any discrepancies in his testimony would have led to a different outcome of trial. For the second claim, Henderson fails to demonstrate how Ms. Keesee's delay in reporting the crime would have so undermined her testimony that discussing the delay could have likely led to a different outcome. For the fourth and sixth claims, Henderson again fails to demonstrate how counsel's actions were not tactical

5

or, even if counsel slightly misstated an aspect of a minor piece of evidence during closing argument, how it constitutes sufficiently prejudice to undermine confidence in the outcome, especially since the trial judge did not rely on the misstatement in closing argument to determine Petitioner's guilt. Accordingly, the first, second, fourth, and sixth claims are dismissed as procedurally defaulted.

## III.

In his third claim, Henderson argues that counsel was ineffective by not objecting to the admission of "prejudicial" testimony and exhibits concerning Ms. Keesee's medicine cabinet. In his fifth claim, Henderson argues that counsel was ineffective by not objecting to the admission of "prejudicial testimony" of Investigator Epperson about pills found in Henderson's vehicle, not investigating whether the pills were medications prescribed to Henderson by a physician, not asking Henderson if they were prescribed to him, or having have the pills analyzed by a professional. The state court adjudicated and rejected these claims, finding that they failed under *Strickland v. Washington*, 466 U.S. 668 (1984). I find that the state court's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts.[1]

---

[1] When reviewing a claim adjudicated on the merits by a state court, a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's adjudication is considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle but unreasonably applies it to the facts of the case. *Id.* at 413. It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. *Id.* at 411. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In order to establish a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. There is a strong presumption that an attorney is acting reasonably. *Id.* at 688-89. To establish prejudice to his defense, a petitioner must demonstrate that, but for his attorney's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.*

When evaluating claims of ineffective assistance of counsel, federal habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland* . . . ." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard," "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Id.* at 1420 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard." *Id.*

In his third claim, Henderson contends counsel failed to object to evidence regarding Ms. Keesee's medicine cabinet as speculative and improper after Ms. Keesee said she did not hear Henderson open or close the medicine cabinet. Contrary to Henderson's contention, counsel

7

objected to the testimony and charge for prescription fraud as irrelevant, prejudicial, and inadmissible "other crimes" evidence. Even if counsel could have raised some other nonfrivolous issue, "counsel is not ineffective because he overlooks one strategy while pursuing another." *Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) (holding that even if counsel's failure to move to strike the evidence was the result of oversight, that failure was not so deficient to warrant a conclusion that counsel was not functioning as the counsel guaranteed by the Sixth Amendment). Moreover, Ms. Keesee said during direct examination that she heard Henderson flush the toilet but she did not hear any cabinets open, which was testimony helpful to Henderson's case.

In his fifth claim, Henderson complains counsel was ineffective for failing to object to prejudicial testimony of Investigator Epperson regarding pills found in Henderson's vehicle. He alleges counsel failed to investigate whether the pills were medications prescribed to Henderson, ask Henderson if they were prescribed to him, or have the pills analyzed by a professional. Henderson failed in state court to proffer any credible evidence that the pills were not prescription medications, that Investigator Epperson was incapable of identifying the pills from their appearance, or that Henderson had a valid prescription for the medication.[2] Furthermore, Investigator Epperson did not testify that the pills were, in fact, hydrocodone or another prescription medication. Instead, Investigator Epperson testified that he found a variety of "prescription-type" pills, and the precise nature of the pills was not important to the offense of burglary because they were relevant only to show the reason for unlawful entry. Accordingly,

---

[2] To the extent Petitioner presents such information in the first instance in this court, I am not permitted to consider it. *See Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011). Consequently, Petitioner's motion to expand the record will be denied as the information in support of the motion is barred by *Cullen* and Rule 7 of the Rules Governing Section 2254 Petition and, in any event, would not change the outcome of the trial.

8

the state court's adjudication of these ineffective assistance claims was not contrary to, or an unreasonable application of, clearly established federal law and did not result in a decision that was based on an unreasonable determination of the facts. Accordingly, respondent's motion to dismiss will be granted.

## IV.

For the reasons stated, I will deny Henderson's motion to expand the record and will grant respondent's motion to dismiss.

ENTER: This 11th day of September, 2015.

/s/ Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

9

Case 7:14-cv-00491-NKM-RSB   Document 16   Filed 09/11/15   Page 9 of 10   Pageid#: 277